IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER J. MCCLOUD,<br><br>    **Plaintiff,**<br><br>v.<br><br>ANTHONY WILLS, MAJOR ROWAN, LT. ROYSTER, C/O KIEFER, SANDY WALKER, ANTHONY JONES, JOSHUA SHOENBECK, ANGIE CRAINE, JOHN DOE #1, JOHN DOE #2, and MARGARET MADOLE,<br><br>    **Defendants.** | Case No. 24-cv-1802-NJR |

## MEMORANDUM AND ORDER

**ROSENTENGEL, Chief Judge:**

Plaintiff Peter J. McCloud, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, McCloud alleges that he was subjected to unconstitutional conditions of confinement, denied pain medication, and served food with bugs in it.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

On May 24, 2023, McCloud arrived at Menard and was placed in a cell in North 2 (Doc. 1, p. 8). The cell lacked bed sheets and the mattress had feces on it. The water in the cell did not work. There was feces and blood on the wall. He was also denied access to his property. He remained in the cell for months. He asked the gallery officer, Correctional Officer Kiefer, for cleaning supplies, bed sheets, and his property (*Id.*). The officer also saw the state of his cell every time he picked up meal trays, but Kiefer just laughed and said, "welcome to Menard" (*Id.*). He also asked Major Rowan and Lieutenant Royster to move him to another cell, but they ignored his requests (*Id.*).

In July 2023, McCloud asked to see mental health staff because the inmate in the neighboring cell killed himself due to the poor conditions in the cell (Doc. 1, p. 9). McCloud also began to complain of back pain because medical director Angie Craine took McCloud off of his pain medications (*Id.*). He alleges that Craine denied his request to see a nurse practitioner for months (*Id* at p. 15).

McCloud was also denied access to recreation, which he alleges was part of his therapy for his back (*Id.*). No one in the unit was allowed recreation through August 2023 (*Id.*). The inmates were on lockdown 24 hours a day. McCloud alleges this was on orders of Anthony Wills (*Id.* at pp. 9, 12). As a result, McCloud alleges that his mental health suffered, and he had increased pain from not being able to move around (*Id.*).

On September 26, 2023, Correctional Officer Kiefer came to McCloud's cell and said that he could go to yard due to all of the inmates' crying (*Id.* at pp. 9-10). McCloud complied with the strip search and was heading out to the yard when the officer at the

door stopped McCloud. The officer noted that McCloud's hair was braided, and he could not attend yard with braids (*Id.*). McCloud noted that his hair was in "locks" and they could not come out. The officer directed Kiefer to take McCloud back to his cell (*Id.* at p. 10). On the way back to the cell, Kiefer made sexually harassing comments. McCloud asked to speak to a lieutenant, and Kiefer punched McCloud in the back of the head and maced him (*Id.*). McCloud alleges that Anthony Wills and Margaret Madole with the Administrative Review Board ("ARB") allow officers to use mace for even small infractions (*Id.* at p. 13).

McCloud went on suicide watch after the incident due to his deteriorating mental health (Doc. 1, p. 10). He also filed a complaint pursuant to the Prison Rape Elimination Act ("PREA"). Kiefer continued to sexually harass McCloud. Kiefer also wrote a disciplinary report against McCloud, alleging that McCloud assaulted him (*Id.*). McCloud asked staff for a shower to wash off the mace and for pain medication, but his requests were denied (*Id.*). A mental health professional finally prescribed him pain medication. After two weeks, McCloud come off of suicide watch in order to shower (*Id.*). Although he requested a shower while on watch, officers told him that Warden Wills does not allow showers or property while on suicide watch (*Id.*).

McCloud filed grievances and wrote to the ARB about his situation. He also submitted his written statement that he planned to give before the adjustment committee on his ticket (*Id.* at pp. 10-11). He gave adjustment committee members Sandy Walker, Anthony Jones, and Joshua Shoenbeck his statement and told them to check the cameras because the video would support his statement (*Id.* at p. 11). He also presented the

committee with witnesses (*Id.*). But Shoenbeck just laughed and said, "you don't win in Menard" (*Id.*). McCloud was found guilty of the charges and sentenced to 45 days in segregation (*Id.*). The committee members did not read McCloud's statement, nor did they call his witnesses.

The day after his hearing, Food Supervisors John Doe #1 and John Doe #2 served the inmates on the gallery food with insects and roaches (*Id.* at p. 11). All of the inmates, including McCloud, received the tainted food. Although the inmates informed the lieutenant about the issues with the food, he just laughed and made jokes about the food (*Id.*). The inmates asked for medical care or a mental health crisis team, but they were refused care.

## **Preliminary Dismissals**

As an initial matter, McCloud fails to state a claim against Margaret Madole. Although he alleges that he wrote grievances and letters to the ARB, Madole cannot be liable for simply failing to remedy his issues through the grievance process. The simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). Nor are there any allegations suggesting that she was aware of the conditions that McCloud faced at Menard. McCloud also alleges that Wills allowed the officers to use mace and that he was denied a shower by officers per Warden Wills (*Id.* at pp. 10, 13). But Wills cannot be liable simply in his position as warden because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Warden Wills has to be personally

4

involved in the actions at issue. Although "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it," McCloud only alleges in conclusory fashion that Wills allowed the officers to use mace and deny showers. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quotations omitted). Nothing in the Complaint suggests that Wills approved of the conduct or turned a blind eye to it.

McCloud also includes various potential claims that he fails to attach to a specific defendant. He alleges that he requested showers while on suicide watch, but his requests were denied by correctional officers (Doc. 1, p. 10). He also alleges that he complained to officers and a lieutenant about the tainted food, but they denied his requests for medical care. But McCloud fails to identify these officers by name or John Doe designation. Although McCloud may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he refers only to officers, staff, and lieutenant. These claims are too generic to survive threshold review. Further, he fails to identify the lieutenant in the case caption. *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Thus, McCloud's claims regarding his requests for showers and his requests for care in response to the tainted food are **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

>   **Count 1:** Eighth Amendment conditions of confinement claim against Correctional Officer Kiefer, Major Rowan, and Lieutenant Royster for housing McCloud in an unsanitary cell.
>
>   **Count 2:** Eighth Amendment deliberate indifference claim against Angie Craine for denying McCloud's pain medication and refusing his request to see a nurse practitioner.
>
>   **Count 3:** Eighth Amendment conditions of confinement claim against Anthony Wills for denying McCloud access to the recreational yard for four months.
>
>   **Count 4:** Eighth Amendment excessive force claim against Correctional Officer Kiefer for punching, macing, and sexually harassing McCloud on September 26, 2023.
>
>   **Count 5:** Fourteenth Amendment due process claim against Sandy Walker, Anthony Jones, and Joshua Shoenbeck for denying McCloud's statement and request for witnesses.
>
>   **Count 6:** Eighth Amendment conditions of confinement claim against Food Supervisors John Doe #1 and John Doe #2 for serving McCloud food with insects.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, McCloud states a viable conditions of confinement claim against Correction Officer Kiefer, Major Rowan, and Lieutenant Royster in Count 1 and against

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Anthony Wills in Count 3. He alleges that none of the officers in North 2 would provide him with supplies to clean his cell or transfer him to another cell. Further, he alleges that Anthony Wills issued a lockdown for North 2 which prevented the inmates from all recreational activity for several months. That is enough at this stage to state a claim in Counts 1 and 3.

McCloud also adequately states a claim against Kiefer in Count 4 for excessive force. *Washington v. Hively*, 695 F.3d 641, 642-643 (7th Cir. 2012); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

McCloud fails, however, to state a claim for due process violations. He alleges that the adjustment committee denied his request to read a statement and call witnesses. He also asked them to review the video footage of the incident. Although the committee members' actions could amount to a due process violation, an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A short stay in segregation, by itself, does not typically amount to an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (135 days in segregation, absent any atypical and significant conditions, "does not violate the Fourteenth Amendment"); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days in segregation did not state a claim). McCloud only spent

45 days in segregation, and he fails to describe any of the conditions that he faced while in segregation. He fails to offer any allegations suggesting that he faced atypical and significant conditions that would amount to a liberty interest. Thus, McCloud fails to state a due process claim. His claim in Count 5 against Sandy Walker, Anthony Jones, and Joshua Shoenbeck is **DISMISSED without prejudice**.

### Severance of Counts 2 and 6

McCloud's claim of medical deliberate indifference against Angie Craine in Count 2 and his claim against the food supervisors in Count 6 are unrelated to the claims regarding the conditions of his cell and use of force by Correctional Officer Kiefer. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Count 2 and Count 6 into separate cases.

### Motion for Class Action Certification

McCloud seeks to bring his lawsuit on behalf of all inmates at Menard who have faced unconstitutional conditions of confinement, denial of medical care, and repeated use of force with mace (Doc. 13). To be certified as a class, McCloud must first satisfy the four elements in Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Then, the case must fall under one of the conditions specified in Rule 23(b). *See* FED. R. CIV. P. 23(a), (b); *Lacy v. Cook Cnty.*, 897 F.3d 847, 864 (7th Cir. 2018). Here, McCloud includes claims that are only specific to him. He alleges that Kiefer used excessive force on him, that Angie Craine denied him medical care, and

8

that he was denied due process protections. Thus, these claims are not suitable for a class action. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (representative's claims must have the "same essential characteristics as the claims of the class at large"). McCloud also cannot satisfy the element of adequacy of representation because as a nonlawyer, he cannot represent the other potential members of the class. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) ("[I]t is generally not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative.") (emphasis omitted). McCloud acknowledges that he cannot represent the potential members but asks that counsel be assigned to represent the proposed class action. But there is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). And the Court finds that McCloud is capable of representing himself on his own, individual claims at this stage. Thus, his request for class certification (Doc. 13) is **DENIED**.

## Motion for Counsel

As to his motion for counsel (Doc. 20), McCloud notes that he has contacted several law firms who declined to take his case. As to his ability to represent himself, he notes that the claims are complex and will need extensive discovery. But given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond

to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Defendants have not yet been served nor has an Answer been filed. Once all defendants have filed Answers, the Court will enter a scheduling order with initial discovery deadlines, including deadlines related to the issue of whether McCloud exhausted his administrative issues. The Court finds that this is a straight-forward issue which McCloud should be able to handle on his own. But if he experiences difficulties after the scheduling order is entered, he may renew his request for counsel at that time. For now, his request for counsel (Doc. 20) is **DENIED**.

## Disposition

For the reasons stated above, Count 3 against Angie Craine and Count 6 against John Doe #1 and John Doe #2 are **SEVERED** into two separate cases. In each new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order; and
- The Complaint (Doc 1).

As to the remaining claims, Count 1 shall proceed against Correctional Officer Kiefer, Major Rowan, and Lieutenant Royster. Count 3 shall proceed against Anthony Wills. Count 4 shall proceed against Kiefer. Count 5 against Sandy Walker, Anthony Jones, and Joshua Shoenbeck as well as any claim against Margaret Madole are

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

**DISMISSED without prejudice.** McCloud's motion for status of the case (Doc. 15) is **DENIED.**

The Clerk of Court shall prepare for Defendants Correctional Officer Kiefer, Major Rowan, Anthony Wills, and Lieutenant Royster: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by McCloud. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by McCloud, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against McCloud, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, McCloud is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: December 17, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**